**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| KIA MONTGOMERY, on behalf of herself and all others similarly situated, **)** **)** **)** | |
| Plaintiffs, **)** **)** | Case No. 18-cv-62683 |
| v. **)** **)** | |
| 3300 CORP., D/B/A CLUB PINK CHAMPAGNE AND SHOWGIRLS, a Florida corporation, **)** **)** **)** **)** **)** | |

**DEFENDANT'S MOTION FOR RECONSIDERATION OF THIS COURT'S
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
[Dkt. No. 112], AND FOR THIS COURT TO CONSIDER THE EVIDENCE
SUBMITTED BY DEFENDANT ON DECEMBER 30, 2019 [Dkt. No. 101, *et seq.*],
<u>IN ORDER TO PREVENT CLEAR ERROR AND MANIFEST INJUSTICE</u>**

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ..........................................................................................1

II.   STANDARD OF REVIEW ...........................................................................2

III.  ARGUMENT .................................................................................................2

      A.    It Is Clear Error for this Court to Have Issued a Summary
            Judgment Ruling Without Considering the Entire Record,
            Including the Evidence Submitted by Defendant on December 30,
            2019 [Dkt. No. 101, *et seq.*]....................................................................2

      B.    It Is Manifest Injustice for this Court to Issue a Summary
            Judgment Ruling Without Considering the Entire Record,
            Including the Evidence Submitted by Defendant on December 30,
            2019 [Dkt. No. 101, *et seq.*]....................................................................4

            1.    Wayne Abbott – Club Pink's Owner and Montgomery's
                  Own Witness, Unequivocally Testified in His Deposition
                  that Plaintiff Has Never Had Any Affiliation with Club
                  Pink ...............................................................................................5

            2.    Ernie Alvarez – Club Pink's Security Manager and
                  Montgomery's Own Witness, Unequivocally Testified in
                  His Deposition that Plaintiff Has Never Had Any
                  Affiliation with Club Pink ...........................................................5

            3.    Officer Reynolds – the BSO Deputy Who Responded
                  When Montgomery Was Ejected from Club Pink for Being
                  Drunk and Violent on December 17, 2016 and
                  Montgomery's Own Witness, Unequivocally Testified in
                  His Deposition that Plaintiff Was Not Affiliated with Club
                  Pink ...............................................................................................6

            4.    Keegan Mitchell – a Club Pink Bartender, Unequivocally
                  Testified in Her Deposition that Plaintiff Has Never Had
                  Any Affiliation with Club Pink.....................................................6

            5.    Rohan Brown – Club Pink Security Personnel,
                  Unequivocally Testified in His Deposition that Plaintiff
                  Has Never Had Any Affiliation with Club Pink............................7

            6.    George Schmidt – Club Pink Credit Card Processing
                  Technician, Unequivocally Testified in His Deposition that
                  Plaintiff Has Never Had Any Affiliation with Club Pink.............7

i

7.      Jerry Kees – a Regular Customer of Club Pink,
        Unequivocally Testified in His Deposition that Plaintiff
        Has Never Had Any Affiliation with Club Pink ..........................................7

8.      Decius Ambroise – a Regular Customer at Club Pink,
        Unequivocally Testified in His Deposition that Plaintiff
        Has Never Had Any Affiliation with Club Pink ..........................................8

9.      Steve Wright – a Regular Customer at Club Pink,
        Unequivocally Testified in His Deposition that Plaintiff
        Has Never Had Any Affiliation with Club Pink ..........................................8

10.     The Deposition Testimony of Plaintiff's Sham Witness
        Felix Johnson Unequivocally Shows that Montgomery's
        Lawsuit Is a Farce ......................................................................................8

11.     Plaintiff's Sham Witness Gladstone B. Perrin, Jr., Failed to
        Appear at Deposition and, as a Matter of Law, Cannot
        Support Plaintiff's Claims ...........................................................................9

C.      It Is Manifest Injustice for this Court to Issue a Summary
        Judgment Ruling Without Considering the Supplemental Statement
        of Material Facts Submitted by Defendant on December 30, 2019
        [Dkt. No. 101-1] ..............................................................................................10

D.      It Is Clear Error and a Manifest Injustice for this Court to Fail to
        Consider Plaintiff's Status as a Dancer at the Port Hole Pub and
        Plaintiff Failure to Know Club Pink's Hours of Operation ................................10

E.      It Is Clear Error and a Manifest Injustice for this Court to Fail to
        Consider Plaintiff's Status as a Criminal Fugitive During the
        November 2015 through October 2017 Timeframe at Issue, While
        Shifting the Burden on Defendant to Produce a Document that
        Does Not Exist .................................................................................................11

F.      It Is Clear Error and a Manifest Injustice for this Court to Provide
        Any Weight to the Affidavits of Johnson and Perrin ........................................12

        1.      Johnson .................................................................................................13

        2.      Perrin ....................................................................................................13

G.      It Is Clear Error and a Manifest Injustice for this Court to Provide
        Any Weight to Plaintiff's Affidavits.................................................................14

H.      It Is Clear Error and a Manifest Injustice for this Court to Allow
        the Police Report to Prevent Summary Judgment in Club Pink's
        Favor ...............................................................................................................16

IV.    CONCLUSION................................................................................................................18

V.     REQUEST FOR HEARING PURSUANT TO S.D. Fla. L.R. 7.1(b) ..............................18

VI.    PRE-FILING CONFERENCE PURSUANT TO S.D. Fla. L.R. 7.1(a)(3)........................18

Defendant 3300 Corp., d/b/a Club Pink Champagne and Showgirls, (hereinafter referred to as "Defendant") respectfully files this motion for reconsideration of this Court's order denying Defendant's motion for summary judgment [Dkt. No. 112], and for this Court to consider the evidence submitted by Defendant on December 30, 2019 [Dkt. No. 101, *et seq.*], in this litigation against Plaintiff Kia Montgomery (hereinafter referred to as "Plaintiff"). Defendant files this motion to prevent clear error and manifest injustice and, in support, states:

## I.      INTRODUCTION

On August 4, 2020, this Court issued an order denying Defendant's motion for summary judgment. [Dkt. No. 112].  In this Court's order, this Court found, *inter alia*:

> Here, the parties have not completed, or even conducted discovery prior to Club Pink's filing of this motion. Indeed, Club Pink's refused to even coordinate a Rule 26 conference with Ms. Montgomery, purportedly because its Motion to Dismiss and Motion to Stay were still pending. The Court has since made a ruling on the Motion to Dismiss and Motion to Stay. Yet, the parties have failed to engage in any meaningful discovery.

[Dkt. No. 112 at page 6 of 7].

Respectfully, this Court is incorrect.  This Court has overlooked the record evidence and substantial discovery in this case, including but not limited ten (10) deposition transcript excerpts from depositions taken in this case that Defendant submitted on December 30, 2019 in support of Defendant's motion for summary judgment. *See* [Dkt. Nos. 101-3 (Abbott deposition), 101-4 (Alvarez deposition), 101-5 (Office Reynolds deposition), 101-6 (Mitchell deposition), 101-7 (Brown deposition), 101-8 (Schmidt deposition), 101-10 (Kees deposition), 101-11 (Ambroise deposition), 101-12 (Wright deposition), and 101-13 (Johnson deposition)].

Moreover, this Court has overlooked the supplement submitted by Defendant on December 30, 2019, [Dkt. No. 101], that appends a supplemental statement of facts [Dkt. No. 101-1], a proposed order for this Court's consideration that incorporates the extensive evidence in this case [Dkt. No. 101-2], and other evidence, [Dkt. No. 101-9 (responses to requests for admission), 101-14 (return of service), 101-15 (certificate of non-appearance), and 101-16 (certificate of non-appearance)].

Accordingly, Defendant respectfully asks this Court to reconsider its order denying Defendant's motion for summary judgment [Dkt. No. 112], in light of the December 30,

2019 submission by Defendant [Dkt. No. 101 *et seq.*], in order to prevent clear error and manifest injustice. Additionally, Defendant respectfully asks this Court to enter Defendant's proposed order submitted on December 30, 2019, which synthesizes all of the record evidence. [Dkt. No. 101-2].

## II.  STANDARD OF REVIEW

This Court has previously articulated the standard of review for motions for reconsideration as follows:

> The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. Reconsideration of a previous order is an extraordinary remedy to be employed sparingly. Three major grounds justify reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or to prevent manifest injustice. A motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made. The motion to reconsider would be appropriate where, for example, the court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. District courts decisions on motions for reconsideration are reviewed for abuse of discretion, thus affording the courts with substantial discretion in their rulings.

*Galdames v. N & D Inv. Corp.*, No. 08-20472, 2009 U.S. Dist. LEXIS 17125, at *2-*3 (S.D. Fla. Jan. 27, 2009) (internal citations and quotations omitted) (Cooke, J.).

As stated herein, Defendant meets the grounds necessary for this Court to grant reconsideration of this Court's order denying Defendant's motion for summary judgment [Dkt. No. 112], including since reconsideration would prevent clear error and manifest injustice and since this Court would also consider new evidence this Court did not consider.

## III.  ARGUMENT

### A.   It Is Clear Error for this Court to Have Issued a Summary Judgment Ruling Without Considering the Entire Record, Including the Evidence Submitted by Defendant on December 30, 2019 [Dkt. No. 101, *et seq.*]

This Court decided summary judgment without considering the entire record in the case, including the evidence submitted by Defendant on December 30, 2019. [Dkt. No. 101, *et seq.*].

In deciding summary judgment under Federal Rule of Civil Procedure 56, "the court is obliged to take account of the entire setting of the case and must consider all papers of record as well as any materials prepared for the motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986).   As the U.S. Supreme Court explained in *Poller v. Columbia Broadcasting Sys.*, 368 U.S. 464 (1962), "[T]he draftsmen of [Federal Rule of Civil Procedure 56] of course did not intend to cut off a litigant's right to a trial before the appropriate fact-finder if triable issues remained unresolved after the pleadings were closed and pretrial discovery had." *Id.* at 477-478.

Thus, it is a fundamental principal of jurisprudence that that civil litigants are entitled to have the entire record considered by a trial court on summary judgment under Federal Rule of Civil Procedure 56:

> [T]he formal issues framed by the pleadings are not controlling on a motion for summary judgment; the court must consider the issues presented by the other materials offered by the parties on the motion to determine whether the Rule 56 request should be granted ... the Court is obliged to take account of the entire setting of the case as a Rule 56 motion. In addition to the pleadings, it will consider all papers of record ...

10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2721 (4th ed.).[1]

Thus, it was clear error for this Court to decide summary judgment without considering the entire record in the case, including the evidence submitted by Defendant on December 30, 2019. [Dkt. No. 101, *et seq.*]. *See*, *e.g.*, *La Buy v. Howes Leather Company*, 352 U.S. 249, 256 (1957) (writs of *mandamus* by the Seventh Circuit were proper because the district court's actions "amounted to little less than an abdication of the judicial function depriving the parties of a trial before the court on the basic issues involved in the

---

[1] *See also U.S. v. Diebold, Inc.*, 369 U.S. 654 (1962); *Animal Legal Defense Fund, Inc. v. Glickman*, 154 F.3d 426, 451 (D.C. Cir. 1998); *Yates v. Transamerica Ins. Co., Inc.*, 928 F.2d 199, 202 (6th Cir. 1991); *Schneider v. TRW, Inc.*, 938 F.2d 986, 1002 (9th Cir. 1991); *Marsh v. Austin-Fort Worth Coca-Cola Bottling Co.*, 744 F.2d 1077, 1079 n.4 (5th Cir. 1984); *Eastland v. Tennessee Valley Authority*, 553 F.2d 364, 370 (5th Cir. 1977); *Tripoli Co. v. Wella Corp.*, 425 F.2d 932, 934–935 (3d Cir. 1970); *Northwestern Nat. Ins. Co. v. Corley*, 503 F.2d 224, 232 (7th Cir. 1974).

litigation."); *Los Angeles Brush Mfg. Corp. v. James*, 272 U.S. 701, 707 (1927) ("Were [this Court] to find that the rules have been practically nullified by a District Judge or by a concert of action on the part of several District Judges, it would not hesitate to restrain them."); *McCullough v. Cosgrave*, 309 U.S. 634 (1940) (writ of *mandamus* issued requiring district court to follow trial rule); *Schlagenhauf v. Holder*, 379 U.S. 104 (1964) (recognizing a writ of mandamus as a vehicle for addressing a misapplication of the Federal Rules of Civil Procedure).

This Court should reconsider summary judgment including the evidence submitted by Defendant on December 30, 2019, [Dkt. No. 101, *et seq.*], to prevent such clear error.

**B.     It Is Manifest Injustice for this Court to Issue a Summary Judgment Ruling Without Considering the Entire Record, Including the Evidence Submitted by Defendant on December 30, 2019 [Dkt. No. 101, *et seq.*]**

Besides the clear error, the Court's adjudication of summary judgment without considering the entire record in the case, including the evidence submitted by Defendant on December 30, 2019, [Dkt. No. 101, *et seq.*], is a manifest injustice.

In the record evidence this Court overlooked, each of the witnesses confirm that Plaintiff's lawsuit is a sham, as Plaintiff's claim of having an affiliation with Club Pink from November 2015 to October 2017 is false. Thus, in addition to the sworn witness testimony previously submitted from actual performance artists who have performed at Club Pink, bar tenders, security personnel, patrons, credit card technicians, and managers, [Dkt. Nos. 66-1-66-10], there are ten (10) depositions that further demonstrate that there is no genuine dispute of material fact and that Club Pink is entitled to judgment as a matter of law in Club Pink's favor forthwith on Plaintiff's FLSA claims. [Dkt. Nos. 101-3 (Abbott deposition), 101-4 (Alvarez deposition), 101-5 (Office Reynolds deposition), 101-6 (Mitchell deposition), 101-7 (Brown deposition), 101-8 (Schmidt deposition), 101-10 (Kees deposition), 101-11 (Ambroise deposition), 101-12 (Wright deposition), and 101-13 (Johnson deposition)].

Additionally, Plaintiff herself has now admitted that she was a dancer at the Port Hole pub, a completely different entertainment venue than Club Pink, and that Plaintiff was in Pittsburgh, Pennsylvania during the time when Plaintiff falsely alleges "dancing" at Club Pink in Pompano Beach, Florida. [Dkt. No. 101-9].

Thus, it would be a manifest injustice were this Court to not reconsider summary judgment in light of the evidence Defendant submitted to this Court on December 30, 2019, which is summarized as follows:

> 1. **Wayne Abbott – Club Pink's Owner and Montgomery's Own Witness, Unequivocally Testified in His Deposition that Plaintiff Has Never Had Any Affiliation with Club Pink**

Wayne Abbott is Club Pink's owner who, as he previously testified, [Dkt. No. 39-2], undertook a herculean effort to even determine who Montgomery was when Montgomery and her counsel starting demanding money in exchange for not filing a lawsuit. [Dkt. No. 66-10].

Wayne Abbott is listed as Montgomery's own witness. [Dkt. No. 74].

Wayne Abbott unequivocally testified in deposition that Montgomery has never had any affiliation with Club Pink. *See* [Dkt. No. 101-3 at 12/18/19 Tr. 35:2-24].

Wayne Abbott previously appeared before this Court prepared to testify on October 31, 2019 that Plaintiff's lawsuit is a sham, as Plaintiff's claim of having an affiliation with Club Pink from November 2015 to October 2017 is false. *See* [Dkt. No. 94, 10/30/19 Tr. at 2:7-10, 5:23-25].

> 2. **Ernie Alvarez – Club Pink's Security Manager and Montgomery's Own Witness, Unequivocally Testified in His Deposition that Plaintiff Has Never Had Any Affiliation with Club Pink**

Ernie Alvarez is a Club Pink manager who was at Club Pink when Montgomery was twice ejected for drunken violence, on whom Montgomery called the police, and against whom no charges were filed. [Dkt. No. 66-2].

Ernie Alvarez is listed as Montgomery's own witness. [Dkt. No. 74].

Ernie Alvarez unequivocally testified in deposition that Montgomery has never had any affiliation with Club Pink. *See* [Dkt. No. 101-4, at 12/18/19 Tr. 25:6-24]. Montgomery was an unwelcomed customer of Club Pink on two different occasions in December 2016 and was ejected from Club Pink on both occasions for (admittedly) being drunk and violent. [Dkt. No. 66-2, ¶¶6-9]. Club Pink's internal reports documented Montgomery being an unwelcomed customer of Club Pink on two different occasions in December 2016 and was

ejected from Club Pink on both occasions for (admittedly) being drunk and violent. *See* [Dkt. No. 101-4 at 12/18/19 Tr. 25:6-26:24]; [Dkt. Nos. 27-1, 27-2].

Ernie Alvarez previously appeared before this Court prepared to testify on October 31, 2019 that Plaintiff's lawsuit is a sham, as Plaintiff's claim of having an affiliation with Club Pink from November 2015 to October 2017 is false. *See* [Dkt. No. 94, 10/30/19 Tr. at 2:7-10, 5:23-25].

> **3. Officer Reynolds – the BSO Deputy Who Responded When Montgomery Was Ejected from Club Pink for Being Drunk and Violent on December 17, 2016 and Montgomery's Own Witness, Unequivocally Testified in His Deposition that Plaintiff Was Not Affiliated with Club Pink**

The December 17, 2016 the police report shows that police responded to Club Pink after Plaintiff retributively called the police for having been ejected from Club Pink for being drunk and violent. [Dkt. No. 41-3].

Officer Reynolds, the responding officer, testified in his deposition that he cannot support Plaintiff's claim of an affiliation with Club Pink. *See* [Dkt. No. 101-5 at 12/10/19 Tr. 20:1-24:23]. Officer Reynolds confirmed in deposition that he did not believe Plaintiff was affiliated with Club Pink. *See* [Dkt. No. 101-5 at 12/10/19 Tr. at 30:14-21]. Officer Reynolds testified that Plaintiff "most likely" did not provide him with an ID because Officer Reynolds would have arrested Plaintiff given the outstanding fugitive warrant Plaintiff had at that time. *See* [Dkt. No. 101-5 at 12/10/19 Tr. 18:1-19:25].   To be sure, Plaintiff admits to having an outstanding fugitive warrant when Plaintiff spoke with Officer Reynolds. *See* [Dkt. No. 101-9 at RFA #'s 2-3].  Plaintiff admits to being in Pennsylvania on June 22, 2017 and December 21, 2017. *See* [Dkt. No. 101-9 at RFA #'s 4-6].

Officer Reynolds agreed that Plaintiff recent arrested at Club Iguana, [Dkt. No. 85-1, ¶¶8-10, 28-34], was similar to Plaintiff's behavior at Club Pink on December 17, 2016, *see* [Dkt. No. 101-5 at 12/10/19 Tr. 34:9-14].

> **4. Keegan Mitchell – a Club Pink Bartender, Unequivocally Testified in Her Deposition that Plaintiff Has Never Had Any Affiliation with Club Pink**

Keegan Mitchell was a Club Pink bartender who worked at Club Pink between November 2015 to October 2017, [Dkt. No. 66-6]. Keegan Mitchell unequivocally testified in deposition that Montgomery has never had any affiliation with Club Pink and that Keegan

Mitchell has never seen Montgomery at Club Pink. *See* [Dkt. No. 101-6 at 12/18/19 Tr. 15:14-25]. Keegan Mitchell worked the daytime shift, *see* [Dkt. No. 101-6 at 12/18/19 Tr. 15:3-8], which is when Montgomery falsely claims to have danced at Club Pink, [Dkt. No. 48, ¶9].

     **5.**     **Rohan Brown – Club Pink Security Personnel,
Unequivocally Testified in His Deposition that Plaintiff
Has Never Had Any Affiliation with Club Pink**

Rohan Brown was a Club Pink security personnel during the November 2015 to October 2016 timeframe. [Dkt. No. 66-7]. Rohan Brown unequivocally testified in deposition that Montgomery has never had any affiliation with Club Pink and that Rohan Brown has never seen Montgomery at Club Pink. *See* [Dkt. No. 101-7 at 12/11/19 Tr. 55:12-56:11].

     **6.**     **George Schmidt – Club Pink Credit Card Processing
Technician, Unequivocally Testified in His Deposition
that Plaintiff Has Never Had Any Affiliation with Club
Pink**

George Schmidt has been a credit card processing technician at Club Pink since before November 2015. [Dkt. No. 66-4]. George Schmidt unequivocally testified in deposition that Montgomery has never had any affiliation with Club Pink and that George Schmidt has never seen Montgomery at Club Pink. *See* [Dkt. No. 101-8 at 12/18/19 Tr. 13:8-18].

     **7.**     **Jerry Kees – a Regular Customer of Club Pink,
Unequivocally Testified in His Deposition that Plaintiff
Has Never Had Any Affiliation with Club Pink**

Jerry Kees is a regular customer at Club Pink since before November 2015. [Dkt. No. 66-5], and frequents Club Pink approximately 4-5 days per week. *See* [Dkt. No. 101-10 at 12/10/19 Tr. 9:16-10:11]. What is significant about Jerry Kees is that Jerry Kees recognized Montgomery from the Port Hole Pub, a completely different entertainment venue than Club Pink. [Dkt. No. 66-5]. Plaintiff has now confirmed that she was a dancer at the Port Hole Pub. *See* [Dkt. No. 101-9 at RFA #1]. And what is significant about that is that the Port Hole Pub opens at 11:30am. [Dkt. No. 66-2, ¶11]; [Dkt. No. 66-10, ¶11].

Montgomery and Montgomery's counsel claims that Montgomery "worked an average of three days per week from around 11:30 am to 9-10:00 pm." [Dkt. No. 48, ¶9 (emphasis added)]. But Club Pink does not open until 1pm and did not open until 1pm

during the November 2015 to October 2017 timeframe during which Montgomery falsely claims an affiliation with Club Pink. [Dkt. No. 85-1, ¶35]. Thus, Montgomery is basing an already frivolous lawsuit on a fictitious opening time for Club Pink.  Montgomery and her lawyers don't even know Club Pink's hours of operation.  Montgomery and her lawyers even now concede that Club Pink opens at 1pm. [Dkt. No. 85-1, ¶35]; [Dkt. No. 93-1, ¶35].

Jerry Kees unequivocally testified in deposition that Montgomery has never had any affiliation with Club Pink and that Jerry Kees has never seen Montgomery at Club Pink, but in fact had seek Montgomery at the Port Hole Pub. *See* [Dkt. No. 101-10 at 12/10/19 Tr. 68:18-72:15].

### 8. Decius Ambroise – a Regular Customer at Club Pink, Unequivocally Testified in His Deposition that Plaintiff Has Never Had Any Affiliation with Club Pink

Decius Ambroise is a regular customer of Club Pink since before November 2015. [Dkt. No. 66-1].  Decius Ambroise unequivocally testified in deposition that Montgomery has never had any affiliation with Club Pink and that Decius Ambroise has never seen Montgomery at Club Pink. *See* [Dkt. No. 101-11 at 12/11/19 Tr. 27:11-23].

### 9. Steve Wright – a Regular Customer at Club Pink, Unequivocally Testified in His Deposition that Plaintiff Has Never Had Any Affiliation with Club Pink

Steve Wright is a regular customer of Club Pink since before November 2015, [Dkt. No. 66-8], and goes to Club Pink five days per week. *See* [Dkt. No. 101-12 at 12/11/19 Tr. 12:3-5]. Steve Wright unequivocally testified in deposition that Montgomery has never had any affiliation with Club Pink and that Steve Wright has never seen Montgomery at Club Pink. *See* [Dkt. No. 101-12 at 12/11/19 Tr. 17:2-14].

### 10. The Deposition Testimony of Plaintiff's Sham Witness Felix Johnson Unequivocally Shows that Montgomery's Lawsuit Is a Farce

In response to Defendant's dispositive motion, Plaintiff and her lawyers submitted a sham eleventh-hour witness, Felix Johnson ("Johnson"), [Dkt. No. 76-1], in an attempt to create an issue of fact as to whether Plaintiff had any affiliation with Club Pink.  The deposition testimony of Johnson unequivocally shows that Montgomery's lawsuit is a sham.

Although Plaintiff falsely alleges that Plaintiff was a dancer at Club Pink between November 2015 to October 2017 for an upwards of 50 hours per week between 11:30am and

9-10 pm, Johnson's deposition testimony contradicts Plaintiff's allegations.  Johnson has a car service business.  *See* [Dkt. No. 101-13 at 12/3/19 Tr. 6:5-10:23]. Johnson testified that he was Montgomery's driver to the Fort Lauderdale Art Institute four days per week, dropping her off at 9am and picking her up "four or five hours" later.  *See* [Dkt. No. 101-13 at 12/3/19 Tr. 35:1-15, 38:3-41:25]. This fundamentally contradicts Plaintiff's alleged hours as a dancer at Club Pink.

Johnson testified that Johnson drove Plaintiff to Vegas Cabaret, Club 4Play, and Gold Club from approximately May 2017 until December 2017. *See* [Dkt. No. 101-13 at 12/3/19 Tr. 76:4, 81:1-95:23].  Johnson testified that he drove Plaintiff to Club 4Play and Gold Club approximately 15 times per month, that he drove Plaintiff to Vegas Cabaret 20 times per month, and that he drove Plaintiff to Vegas Cabaret more than to any other club. *See* [Dkt. No. 101-13 at 12/3/19 Tr. 76:4, 81:1-95:23].  Johnson did not testify that he drove Plaintiff to Club Pink between November 2015 to October 2017.   Johnson testified that he thinks he drove Plaintiff to Club Pink only in March of 2018.  *See* [Dkt. No. 101-13 at 12/3/19 Tr. 71:4-73:20]. But Plaintiff herself does not even claim to have gone to Club Pink after October 2017.

Importantly, Johnson's deposition testimony completely contradicts the affidavit Plaintiff's lawyers got Johnson to sign, *see* [Dkt. No. 101-13  at 12/3/19 Tr. 61:10-18], which itself already conflicted with Plaintiff's allegations and the evidence. *See* [Dkt. No. 95, at pgs. 5-7].

> **11.    Plaintiff's Sham Witness Gladstone B. Perrin, Jr.,
> Failed to Appear at Deposition and, as a Matter of Law,
> Cannot Support Plaintiff's Claims**

In response to Defendant's dispositive motion, Plaintiff and her lawyers submitted a sham eleventh-hour witness, Gladstone B. Perrin, Jr. ("Perrin"), [Dkt. No. 76-2], in an attempt to create an issue of fact as to whether Plaintiff had any affiliation with Club Pink.

Perrin was served with a deposition subpoena. *See* [Dkt. No. 101-14].  Perrin failed to appear at his deposition.  *See* [Dkt. No. 101-15]. Perrin later failed to appear again at another deposition arranged by Montgomery's counsel.  See [Dkt. No. 101-16].

As a matter of law, Plaintiff cannot use Perrin's testimony to oppose summary judgment, since Perrin was not made available for deposition.  *Dedvukaj v. Equilon Enters., L.L.C.*, 301 F. Supp. 2d 664, 668 (E.D. Mich. 2004) *aff'd Dedvukaj v. Equilon Enters.,*

*L.L.C.*, 132 Fed. Appx. 582 (6th Cir. 2005) ("[I]t is unreasonable to rely on affidavit 'evidence' from an individual who has made himself unavailable for discovery and for whom there is even no indication he will be available for trial."); *Bumpas v. Ryan*, No. 3:07-cv-0766, 2013 U.S. Dist. LEXIS 77507, at *6 (M.D. Tenn. June 3, 2013) (same).

This is in addition to the fact that Perrin's affidavit contains no basis for Perrin to testify that Plaintiff had an affiliation with Club Pink, much less for an average of 30 hours a week, with an upwards of 50 hours a week, from November 2015 to October 2017. [Dkt. No. 95, at pgs. 5-7]. Perrin has no connection to nor affiliation with Club Pink, nor does Perrin state otherwise. [Dkt. No. 95, at pgs. 5-7].

**C.      It Is Manifest Injustice for this Court to Issue a Summary Judgment Ruling Without Considering the Supplemental Statement of Material Facts Submitted by Defendant on December 30, 2019 [Dkt. No. 101-1]**

In addition to the clear error and manifest injustice described above, the Court's adjudication of summary judgment without reference to Defendant's supplemental statement of material facts submitted on December 30, 2019 [Dkt. No. 101-1] is also a manifest injustice.

Defendant's supplemental statement of material facts sets forth the record evidence that this Court has overlooked, including but not limited ten (10) deposition transcript excerpts from depositions taken in this case that Defendant submitted on December 30, 2019 in support of Defendant's motion for summary judgment. [Dkt. No. 101-1].  To prevent manifest injustice, Defendant respectfully asks this Court to take into account Defendant's supplemental statement of material facts in reconsidering its order on Defendant's motion for summary judgment.

Moreover, Defendant respectfully asks this Court to enter Defendant's proposed order submitted on December 30, 2019, which synthesizes all of the record evidence. [Dkt. No. 101-2].

**D.      It Is Clear Error and a Manifest Injustice for this Court to Fail to Consider Plaintiff's Status as a Dancer at the Port Hole Pub and Plaintiff Failure to Know Club Pink's Hours of Operation**

This Court committed clear error and a manifest injustice by failing to consider Plaintiff's status as a dancer at a different venue and not knowing Club Pink's hours of operation.

Jerry Kees has seen Montgomery at the Port Hole Pub, a completely different entertainment venue than Club Pink. [Dkt. No. 66-5, ¶6]; [Dkt. No. 101-10, Depo. Tr. at 68:18-72:15].

Plaintiff has confirmed that she was a dancer at the Port Hole Pub. [Dkt. No. 101-9, at RFA #1]. Plaintiff alleges hours of operation for Club Pink, [Dkt. No. 48, ¶9], that are, instead, hours of operation for the Port Hole Pub, [Dkt. No. 66-1, ¶7]; [Dkt. No. 66-2, ¶11]; [Dkt. No. 66-3, ¶7]; [Dkt. No. 66-4, ¶7]; [Dkt. No. 66-5, ¶7]; [Dkt. No. 66-6, ¶7]; [Dkt. No. 66-7, ¶7]; [Dkt. No. 66-8, ¶7]; [Dkt. No. 66-9, ¶7]; [Dkt. No. 66-10, ¶11].

To avoid clear error and manifest injustice, Defendant respectfully asks this Court to reconsider Defendant's motion for summary judgment with these facts that heavily militate in favor of grating summary judgment in favor of Defendant.

**E.      It Is Clear Error and a Manifest Injustice for this Court to Fail to Consider Plaintiff's Status as a Criminal Fugitive During the November 2015 through October 2017 Timeframe at Issue, While Shifting the Burden on Defendant to Produce a Document that Does Not Exist**

This Court committed clear error and a manifest injustice by requiring Defendant to provide documentary proof of the non-existence of any contract between Plaintiff and Defendant. [Dkt. No. 112 at page 6 ("Club Pink also asserts that it regularly maintains contracts with its employees but has no such contract with respect to Ms. Montgomery in its records. Notably, Club Pink has not produced any such records, under seal or otherwise, substantiating this fact."). Defendant cannot produce something that does not exist, and this Court should reject such an ontological, burden-shifting paradox.[2]

Plaintiff admits that Plaintiff was a fugitive of the law from the State of Pennsylvania from August 5, 2017 until June 22, 2017. [Dkt. No. 27-4, at pg. 4 of 5]; [Dkt. No. 30-1, at

---

[2] *See*, *e.g.*, *Nesse v. Pittman*, 202 F.R.D. 344, 352 (D. D.C. 2001) ("To construct such a large and nefarious conspiracy on a single alleged misstatement is not to prove prima facie the existence of that conspiracy. It is merely to charge that fraud occurred, and such a charge is insufficient. Blair's 'proof' of a conspiracy to cover up SP's lies is not proof at all; it is an ontological leap of faith.").

pg. 9 of 18]; [Dkt. No. 101-9, at RFA's #2-3]. Plaintiff admits that she was physically present in the State of Pennsylvania on June 22, 2017, [Dkt. No. 101-9, at RFA #4], which overlaps with the November 2015 to October 2017 timeframe Plaintiff alleges she was a dancer at Club Pink. [Dkt. No. 48, ¶¶8-10]. Plaintiff also admits to being in Pennsylvania on December 21, 2017. [Dkt. No. 101-9, at RFA #6].

It is not possible for Plaintiff to both be in Pennsylvania and in Florida. Plaintiff's fugitive status is also critical given how Plaintiff's lack of an ID impacts the case. Officer Reynolds, the responding police officer, testified in deposition that Plaintiff "most likely" did not provide him with an ID because Officer Reynolds would have arrested Plaintiff given the outstanding fugitive warrant Plaintiff had at that time. [Dkt. No. 101-5, Depo. Tr. at 18:1-19:25]. Officer Reynolds testified in deposition that he cannot support Plaintiff's claim of an affiliation with Club Pink. [Dkt. No. 101-5, at Depo. Tr. 20:1-24:23]. Officer Reynolds confirmed in deposition that he did not believe Plaintiff was affiliated with Club Pink. [Dkt. No. 101-5, Depo. Tr. at 30:14-21].

Moreover, Club Pink has a strictly-enforced policy of obtaining government-issued ID's and a contractual signature from anyone seeking a staff position or seeking to be an affiliated performance artist independent contractor at Club Pink. [Dkt. No. 39-2, ¶4]; [Dkt. No. 66-2, ¶13]; [Dkt. No. 66-3, ¶9]; [Dkt. No. 66-4, ¶9]; [Dkt. No. 66-6, ¶9]; [Dkt. No. 66-7, ¶9]; [Dkt. No. 66-9, ¶9]; [Dkt. No. 66-10, ¶14].  Thus, not surprisingly, Club Pink has no contractual signature on file for Plaintiff. [Dkt. No. 39-2, ¶4]; [Dkt. No. 66-10, ¶14]; [Dkt. No. 101-3, Depo. Tr. at Tr. 35:2-24].

Accordingly, it was clear error and manifest injustice for this Court to have shifted the burden to Defendant to provide documentary evidence of a contract that does not exist. Defendant respectfully asks this Court to instead reconsider summary judgment in light of how Plaintiff's status as a fugitive from the State of Pennsylvania impacts the case.

F.     **It Is Clear Error and a Manifest Injustice for this Court to Provide Any Weight to the Affidavits of Johnson and Perrin**

In response to Club Pink's Motion for Summary Judgment, Plaintiff submitted affidavit from Felix Johnson ("Johnson"), [Dkt. No. 76-1], and Gladstone B. Perrin, Jr. ("Perrin"), [Dkt. No. 76-2]. This Court committed clear error and a manifest injustice by crediting the affidavits of Johnson and Perrin.

12

### 1.   Johnson

Johnson testified that Johnson drove Plaintiff to Vegas Cabaret, Club 4Play, and Gold Club. [Dkt. No. 101-13, Depo. Tr. at 76:4, 81:1-95:23]. Johnson did not testify that he drove Plaintiff to Club Pink between November 2015 to October 2017. Johnson testified that he thinks he drove Plaintiff to Club Pink only in March of 2018. [Dkt. No. 101-13, Depo. Tr. at 71:4-73:20]. But Plaintiff herself does not even claim to have gone to Club Pink after October 2017. Johnson testified that he drove Plaintiff to Vegas Cabaret more than any other club. [Dkt. No. 101-13, Depo. Tr. at 76:4, 81:1-95:23].

Johnson testified that he was Montgomery's driver to the Fort Lauderdale Art Institute four days per week, dropping her off at 9am and picking her up "four or five hours" later. *See* [Dkt. No. 101-13 at 12/3/19 Tr. 35:1-15, 38:3-41:25]. This fundamentally contradicts Plaintiff's alleged hours as a dancer at Club Pink. *Compare* [Dkt. No. 48, ¶¶8-10].

Johnson's prior affidavit conflicts with Plaintiff's allegations and the evidence. The Johnson affidavit alleges that Johnson was Plaintiff's driver to Club Pink for a "12pm" shift, "4-5 times a week," and "[f]rom approximately 2017 to 2018." [Dkt. No. 76-1]. However, Club Pink does not open until 1pm. [Dkt. No. 66-1, ¶7]; [Dkt. No. 66-2, ¶11]; [Dkt. No. 66-3, ¶7]; [Dkt. No. 66-4, ¶7]; [Dkt. No. 66-5, ¶7]; [Dkt. No. 66-6, ¶7]; [Dkt. No. 66-7, ¶7]; [Dkt. No. 66-8, ¶7]; [Dkt. No. 66-9, ¶7]; [Dkt. No. 66-10, ¶11]. Moreover, Plaintiff herself alleges that she only went to Club Pink "three days per week," [Dkt. No. 48, ¶9], and Plaintiff herself has no allegations about going to Club Pink in 2018 and instead alleges that she stopped going to Club Pink as of October 2017. [Dkt. No. 48, ¶8].

### 2.   Perrin

Perrin twice failed to appear at depositions in this case. [Dkt. Nos. 101-14-16]. Because Perrin was not made available for deposition, Perrin's testimony cannot be used to oppose Club Pink's motion for summary judgment. *Dedvukaj v. Equilon Enters., L.L.C.*, 301 F. Supp. 2d 664, 668 (E.D. Mich. 2004) *aff'd Dedvukaj v. Equilon Enters., L.L.C.*, 132 Fed. Appx. 582 (6th Cir. 2005) ("[I]t is unreasonable to rely on affidavit 'evidence' from an individual who has made himself unavailable for discovery and for whom there is even no indication he will be available for trial."); *Bumpas v. Ryan*, No. 3:07-cv-0766, 2013 U.S. Dist. LEXIS 77507, at *6 (M.D. Tenn. June 3, 2013) (same).

Regardless, Perrin's affidavit does not create a genuine dispute of material fact. Perrin has no connection to nor affiliation with Club Pink, nor does Perrin state otherwise. [Dkt. No. 76-2]. Indeed, the Perrin affidavit states that Perrin met Plaintiff at Club Pink and falls far short of clearly and unequivocally testifying that Plaintiff was ever an actual dancer affiliated with Club Pink. [Dkt. No. 76-2]. All that the Perrin affidavit alleges is that Perrin met Montgomery at Club Pink in 2015 or 2016. In fact, Perrin alleges that Plaintiff has a stage name, "Charm," [Dkt. No. 76-2, ¶3], that not even Plaintiff herself has ever alleged.

Additionally, as stated above, Perrin's affidavit contains no basis for Perrin to testify that Plaintiff had an affiliation with Club Pink, much less for an average of 30 hours a week, with an upwards of 50 hours a week, from November 2015 to October 2017. [Dkt. No. 95, at pgs. 5-7].  Perrin has no connection to nor affiliation with Club Pink, nor does Perrin state otherwise.  [Dkt. No. 95, at pgs. 5-7].

G.    **It Is Clear Error and a Manifest Injustice for this Court to Provide Any Weight to Plaintiff's Affidavits**

This Court committed clear error and a manifest injustice by crediting Plaintiff's affidavits.

To oppose summary judgment, Plaintiff initially submitted five sentences of testimony. [Dkt. No. 41-2]. Later, Plaintiff submitted another affidavit. [Dkt. No. 60-2]. The second affidavit is substantially similar to generic testimony submitted by Plaintiff's lawyers in their other cases. *Compare* [Dkt. No. 60-2] *with* [Dkt. No. 66-11].

The discrepancy between the two affidavits submitted by Plaintiff, along with the fact that the second filing is contains generic testimony filed in other cases by Plaintiff's counsel, warrants this Court striking or disregarding the affidavits. *See*, *e.g.*, *Suvill v. Bogopa Serv. Corp.*, No. 11-cv-3372, 2014 U.S. Dist. LEXIS 141095, at *22 (E.D.N.Y. September 30, 2014) ("a number of the 'cookie cutter' declarations submitted earlier in the litigation by plaintiffs in opposition to defendants' application to preclude conditional certification under 29 U.S.C. § 216(b) have been proven inaccurate."); *Van T. Junkins and Assocs., v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir. 1984) (stating that a "party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."); *Moulton v. DeSue*, No. 3:11-cv-382-J-37JBT, 2012 U.S. Dist. LEXIS 156089, at *1 (M.D. Fla. Oct. 31, 2012) ("The Court may find an affidavit which contradicts testimony on deposition a sham when the party merely contradicts its prior testimony

14

without giving any valid explanation."); *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292-93 (7th Cir. 1996) (stating that a party cannot "create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition *or other sworn testimony*.") (emphasis added); *Sumpter v. Ahlbrecht*, No. 10-cv-00580, 2012 U.S. Dist. LEXIS 8919, *5 (D. Colo. Jan. 26, 2012) ("a contradiction between an affidavit and prior sworn statements need not be direct to justify disregarding the affidavit.").

Regardless, the affidavits do not credibly support Plaintiff's allegation of being a dancer at Club Pink from November of 2015 to October of 2017. For instance, Plaintiff's initial affidavit contradicts the November of 2015 to October of 2017 time-span when she was supposedly dancing in Pompano Beach, Florida at Club Pink, because plaintiff's affidavit suggests that she was living in Pennsylvania from August of 2017 to October of 2017. *See* [Dkt. No. 43, at pg. 2].

Likewise, Plaintiff's initial affidavit does not clearly and unequivocally state that she was a dancer Club Pink in Pompano Beach, Florida from November of 2015 to October of 2017 for an average of 30 hours a week, with an upwards of 50 hours a week. *See* [Dkt. No. 43, at pgs. 2-3]. Indeed, the initial and the subsequent affidavit both fail to allege any specific amounts of money Plaintiff is supposedly owed, specific names of people involved, and any other specific details one would be able to assert were someone actually affiliated with an entertainment venue for 30-hours per week (with an upwards of 50 hours a week) for two years straight.

Moreover, Plaintiff's assertion about "new hire documentation" is not credible, especially since Plaintiff was "most likely" concealing her government-issued ID while she was a criminal fugitive from the State of Pennsylvania. [Dkt. No. 101-5, Depo. Tr. at 18:1-19:25]. Additionally, Club Pink also requires any person seeking to be a performance artist to present a government-issued ID, and Club Pink has no records regarding Plaintiff.

Additionally, Plaintiff's testimony has no explanation for and does not address the December 10, 2016 and December 17, 2017 disturbances involving Plaintiff at Club Pink. Indeed, Plaintiff's affidavits also have no explanation for and do not address Plaintiff having told Officer Reynolds that Plaintiff was "suspend[ed]" from Club Pink. [Dkt. No. 26-2, at pg. 4 of 5]. Moreover, Plaintiff's affidavits have no explanation for Plaintiff now admitting to

dancing at the Port Hole Pub and Johnson testifying that Plaintiff danced at Vegas Cabaret, 4Play, and Gold Club.

Furthermore, Plaintiff's affidavits are silent regarding the problem that Plaintiff's "witness list" was submitted after Plaintiff obtained the December 17, 2016 police report and merely copies the witnesses that anyone can glean from the police report. [Dkt. No. 39-1, ¶13]. In other words, Plaintiff's affidavits say nothing about the issue that Plaintiff failed to produce the sort of robust and detailed witness list someone would have if he or she worked somewhere 30- hours a week (with an upwards of 50 hours a week) for a continuous two-year timeframe, as Plaintiff alleges here. Plaintiff's latest amendment to the witness list was used to aid Montgomery's defense of Club Pink's dispositive motion ***and the amendment did not add anyone affiliated with Club Pink***. [Dkt. No. 74]. The amendments were to add Johnson and Perrin, and as discussed above, neither witness creates a genuine dispute of material fact.

The only witnesses Plaintiff has listed that have ever been affiliated with Club Pink are (a) Forever Hamilton, (b) Ernie Alvarez, and (c) Wayne Abbott. As stated above, each of these witnesses unequivocally testify that Plaintiff has never had any affiliation with Club Pink. Thus, ***all of Plaintiff's own witnesses who are affiliated with Club Pink unequivocally testify that Plaintiff has never had any affiliation with Club Pink***.

Importantly, moreover, Plaintiff has not produced a single document showing that she "worked" at Club Pink from November of 2015 to October of 2017.

### H.   It Is Clear Error and a Manifest Injustice for this Court to Allow the Police Report to Prevent Summary Judgment in Club Pink's Favor

This Court committed clear error and a manifest injustice by allowing the police report to prevent summary judgment in Club Pink's favor. [Dkt. No. 112 at page 4 ("[T]he police report notes several facts that give rise to a reasonable conclusion that Ms. Montgomery was indeed a Club Pink employee at the time of the altercation.").  As a matter of law, the police report is a disconnected set of inadmissible hearsay statements that should

not be[3] considered for the purposes of summary judgment. *See*, *e.g.*, *Jackson v. Park Place Condos. Ass'n, Inc*., 619 Fed. Appx. 699, 704 (10th Cir. July 28, 2105) ("Ms. Jackson's statements contained in the police report constitute inadmissible hearsay that cannot be used to defeat summary judgment."); *Tranter v. Orick*, 460 Fed. Appx. 513, 515 (6th Cir. Feb. 7, 2012) (police investigation report and witness statements properly excluded as inadmissible hearsay); *Doe v. Farmer*, No. 3:06-0202, 2009 U.S. Dist. LEXIS 104152, at \*16-\*17 (M.D. Tenn. Nov. 9, 2009) ("All of these statements are inadmissible hearsay that the court cannot consider on summary judgment."); *Deitrick v. Costa*, No. 06-cv-1556, 2014 U.S. Dist. LEXIS 183444, at \*42 (M.D. Pa. Oct. 2, 2014) ("the statements in the police report regarding Acri's knowledge will not be considered on summary judgment."). *Draughon v. United States*, No. 14-2264, 2017 U.S. Dist. LEXIS 129259, at \*21-\*25 (D. Kan. Aug. 15, 2017) (excluding statements in police report from consideration at summary judgment as inadmissible hearsay); *Walker v. State Farm Fire & Cas. Co.*, No. 16-cv-00118, 2017 U.S. Dist. LEXIS 85284, at \*27 (D. Colo. Feb. 23, 2017) (same).

Moreover, this Court overlooked the record evidence shedding light on why the police report does not create a genuine dispute of material fact. Plaintiff was at Club Pink on two occasions, December 10, 2016 and December 17, 2016, as a customer of Club Pink. On December 10, 2016, Plaintiff was escorted out of Club Pink as a result of a disturbance Plaintiff had at the bar. [Dkt. No. 27-2]; [Dkt. No. 66-2, ¶6]. On December 17, 2016, Plaintiff was again escorted out of Club Pink as a result of another disturbance Plaintiff had. [Dkt. No. 27-1]; [Dkt. No. 66-2, ¶¶4-10]; [Dkt. No. 66-10, ¶¶5-10].

After the December 17, 2016 disturbance, Plaintiff called the police. [Dkt. No. 26-2]. The police came to Club Pink on December 17, 2016, and took statements from Plaintiff, a Club Pink manager, and a dancer at Club Pink, Forever Hamilton. [Dkt. No. 26-2]. The police did not make any arrests. [Dkt. No. 26-2].

Officer Reynolds, the responding police officer, testified in deposition that Plaintiff "most likely" did not provide him with an ID because Officer Reynolds would have arrested

---

[3] *See Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) ("The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment.") (internal quotations citations omitted).

Plaintiff given the outstanding fugitive warrant Plaintiff had at that time. [Dkt. No. 101-5, Depo. Tr. at 18:1-19:25]. Officer Reynolds testified in deposition that he cannot support Plaintiff's claim of an affiliation with Club Pink. [Dkt. No. 101-5, at Depo. Tr. 20:1-24:23]. Officer Reynolds confirmed in deposition that he did not believe Plaintiff was affiliated with Club Pink. [Dkt. No. 101-5, Depo. Tr. at 30:14-21].

At Club Pink, there are multiple levels of evaluation, from the moment a person steps onto the parking lot until the person reaches the metal detectors at the door. [Dkt. No. 66-10, ¶9]. Plaintiff and her repeated behavior on December 10, 2016 and December 17, 2016 posed a security threat. [Dkt. No. 66-2, ¶¶6-9]; [Dkt. No. 66-10, ¶9]. Plaintiff would have never been welcomed back into Club Pink after December 17, 2016. [Dkt. No. 66-2, ¶¶6-9]; [Dkt. No. 66-10, ¶9].

## IV.    CONCLUSION

WHEREFORE, for the foregoing reasons and reasons to be stated *ore tenus*, Defendant respectfully asks this Court to (a) grant this motion, (b) reconsider its order denying Defendant's motion for summary judgment [Dkt. No. 112], in light of the December 30, 2019 submission by Defendant [Dkt. No. 101 *et seq.*], and (c) to enter Defendant's proposed order submitted on December 30, 2019, which synthesizes all of the record evidence. [Dkt. No. 101-2].

## V.    REQUEST FOR HEARING PURSUANT TO S.D. Fla. L.R. 7.1(b)

Pursuant to S.D. Fla. L.R. 7.1(b), Defendant respectfully asks for a hearing on the instant motion as the issues herein are of fundamental importance and are time sensitive, including since trial is set for September 28, 2020.

## VI.    PRE-FILING CONFERENCE PURSUANT TO S.D. Fla. L.R. 7.1(a)(3)

Undersigned counsel consulted with counsel for Plaintiff and Plaintiff opposes this motion.

DATED:  August 4, 2020                CULLIN O'BRIEN LAW, P.A.
                                      CULLIN A. O'BRIEN
                                      Florida Bar No. 597341


                                      *s/Cullin O'Brien*
                                      CULLIN O'BRIEN

6541 NE 21st Way
Ft. Lauderdale, FL  33308
Telephone:  561/676-6370
561/320-0285 (fax)
cullin@cullinobrienlaw.com

Attorney for Defendant

## CERTIFICATE OF SERVICE

Undersigned counsel certifies that he filed the foregoing with the ECF system and served same on counsel for Plaintiff this August 4, 2020.

/s/ Cullin O'Brien_____
CULLIN O'BRIEN
Florida Bar No. 0597341
cullin@cullinobrienlaw.com